# EXHIBIT A

IN THE COURT OF COMMON PLEAS OF SOMERSET COUNTY, PENNSYLVANIA

| | |
|---|---|
| ROCKWOOD CASUALTY INSURANCE COMPANY, | CIVIL DIVISION |
| Plaintiff, | No. 561 Civil 2012 |
| v. | **COMPLAINT** |
| RANGER COAL HOLDINGS, LLC, | |
| Defendant. | Filed on Behalf of Plaintiff |

Counsel of Record for this Party:

Dennis A. Watson, Esquire
PA I.D. No. 25500

Holly M. Whalen, Esquire
PA I.D. No. 84878

GROGAN GRAFFAM, P.C.
Firm I.D. No. 072
Four Gateway Center, 12th Floor
Pittsburgh, PA 15222
(412) 553-6300

69595-07062



FILED FOR RECORD——
2012 AUG -6 AM 11:30
ANGIE SVONAVEC
PROTHONOTARY
SOMERSET PA



**EXHIBIT**

A

IN THE COURT OF COMMON PLEAS SOMERSET COUNTY, PENNSYLVANIA

| | |
|---|---|
| ROCKWOOD CASUALTY<br>INSURANCE COMPANY,<br><br>Plaintiff,<br>v.<br><br>RANGER COAL HOLDINGS, LLC,<br><br>Defendant. | CIVIL DIVISION<br><br>No. |

## NOTICE TO DEFEND

You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW.  THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

**LAWYER REFERRAL SERVICE**
Southwestern Pennsylvania Legal Services, Inc.
218 North Kimberly Avenue
Suite 101
Somerset, PA  15501
(814) 443-4615
Fax (814) 444-0331

IN THE COURT OF COMMON PLEAS OF SOMERSET COUNTY, PENNSYLVANIA

| | |
|---|---|
| ROCKWOOD CASUALTY INSURANCE COMPANY, | CIVIL DIVISION |
| Plaintiff, | No. |
| v. | |
| RANGER COAL HOLDINGS, LLC, | |
| Defendant. | |

## COMPLAINT

Plaintiff Rockwood Casualty Insurance Company ("Rockwood"), by and through its attorneys, Dennis A. Watson, Esquire, Holly M. Whalen, Esquire, and Grogan Graffam, P.C. files the within Complaint and in support thereof avers as follows:

### A.  The Parties

1.      Plaintiff Rockwood is a Pennsylvania corporation with offices located at 654 Main Street, Rockwood, Pennsylvania 15557.

2.      Defendant Ranger Coal Holdings, LLC ("Ranger") is a Delaware limited liability company with offices located at 106 Lockheed Drive, Beaver, West Virginia 25813.

3.      With respect to all matters alleged in this Complaint, Ranger is the successor in interest to National Coal Corp., ("National") a corporation which was in the business of coal mining and related activities.

4.      Jurisdiction and venue over this action is conferred in this Court as the agreements at issue in this action include a forum selection clause requiring that any actions or claims pursuant to the agreements be brought in the Court of Common Pleas of Somerset County, Pennsylvania.

### B. History of Rockwood – National Relationship

5.      Rockwood incorporates herein as if set forth in full paragraphs 1 - 4 of this Complaint.

6.      On or about April 16, 2005, Rockwood entered into an agreement with National whereby Rockwood agreed to provide workers' compensation and employer's liability insurance coverage to National as an insurer or as reinsurer of Argonaut Great Central Insurance Company ("Argonaut") and National agreed to make payments to Rockwood as set forth below (the "Insurance Agreement").

7.      The agreement was memorialized in an Insurance Agreement signed on July 21, 2005, as subsequently modified by the parties pursuant to an Addendum and correspondence.

8.      Contemporaneous with their entering into the Insurance Agreement described in Paragraph 6, Rockwood and National also agreed to establish an Escrow Account to hold the funds used to discharge National's workers' compensation and employer's liability insurance liabilities and obligations arising from the Insurance Agreement, including its workers' compensation Policy No. WC 9123703, its renewals and extensions (the "Policy"). A true and correct copy of the Insurance Agreement, the Escrow Account Agreement and Addendum No. 1 is attached hereto as Exhibit A.

9.      Pursuant to the Insurance Agreement, National agreed to make monthly premium payments to Rockwood during the applicable coverage terms.

10.     In addition to its monthly premium payments to Rockwood, National also agreed to make payments to Rockwood pursuant to its per occurrence deductible and annual aggregate obligations, together referred to as "National's Deductible Loss Liability".

11.     National's Deductible Loss Liability included all allocated loss adjustment expenses paid by Rockwood in its adjustment of workers' compensation and employer's liability claims on behalf of National.

12.     In order to pay claim losses falling within National's Deductible Loss Liability, National was required to make monetary contributions to a Deductible Loss Fund ("Loss Fund") with such contributions to be held in the Escrow Account as collateral security for the payment of National's Deductible Loss Obligations under the applicable Policy and the Insurance Agreement.

13.     The Insurance Agreement and the Escrow Account Agreement required that National contribute monthly payments to Rockwood pursuant to the Loss Fund Payment Schedule set forth in the Insurance Agreement.

14.     The Insurance Agreement and the Escrow Account Agreement provided in the event that Rockwood determined that National's monthly contribution was insufficient to meet National's Deductible Loss Liability, National was obligated to increase its monthly contribution to such amount as agreed upon by Rockwood and National.

15.     The Insurance Agreement and the Escrow Account Agreement granted Rockwood a security interest in the Loss Fund and all interest, dividends, profits and capital gains accruing thereto and authorized Rockwood, at its sole discretion and as it determined, to apply funds contained in the Escrow Account to any liabilities or obligations of any type whatsoever arising from or relating to the Policy and any other workers' compensation and employer's liability insurance agreements or other agreements of any type by which National may be obligated or liable to Rockwood.

16.     Pursuant to the Insurance Agreement and the Escrow Account Agreement, Rockwood began adjusting workers' compensation and employer liability claims for National which arose after the April 16, 2005 effective date of the Policy.

17.     On or about July 6, 2006, Rockwood and National renewed and amended the Insurance Agreement and the Escrow Account Agreement for a one-year period pursuant to a Renewal Agreement Letter dated July 6, 2006.  A true and correct copy of the July 6, 2006 Renewal Agreement Letter is attached hereto as Exhibit B.

18.     By Renewal Agreement Letter dated June 11, 2007, the Insurance Agreement and the Escrow Account Agreement were again renewed and amended.  A true and correct copy of the June 11, 2007 Renewal Agreement Letter is attached hereto as Exhibit C.

19.     The Insurance Agreement and the Escrow Account Agreement were again renewed and amended by a Renewal Agreement Letter dated April 28, 2008.  A true and correct copy of the April 28, 2008 Renewal Agreement Letter is attached hereto as Exhibit D.

20.     By Renewal Agreement Letter dated June 17, 2009, the Insurance Agreement and the Escrow Account Agreement were again renewed and amended.  A true and correct copy of the June 17, 2009 Renewal Agreement Letter is attached hereto as Exhibit E.

21.     By Renewal Agreement Letter dated May 11, 2010, the Insurance Agreement and the Escrow Account Agreement were again renewed and amended.  A true and correct copy of the May 11, 2010 Renewal Agreement Letter is attached hereto as Exhibit F.

22.     By Letter Agreement of November 11, 2010, the Insurance Agreement and the Escrow Account Agreement were amended by Rockwood and National.  A true and correct copy of the November 11, 2010 Letter Agreement is attached hereto as Exhibit G.

23.    Upon information and belief, on or about December 15, 2010, National was acquired by Ranger Energy Investments, LLC and merged with and into Ranger, a wholly-owned subsidiary of Ranger Energy Investments, LLC.

24.    Upon information and belief, on or about December 15, 2010, all debts, liabilities, obligations, restrictions and duties of National became the debts, liabilities, obligations, restrictions and duties of Ranger.

25.    Upon information and belief, on or about December 15, 2010, as a result of its merger with National, Ranger accepted and assumed, without modification, all ongoing obligations and responsibilities of National relating to National's agreements with Rockwood for Rockwood's administration and handling of National's workers' compensation and employer's liability claims arising from the Policy, the Insurance Agreement, the Escrow Account Agreement, and any and all renewals, extensions or amendments of any applicable contract.

26.    Ranger is the successor in interest and/or assignee of National as to any and all agreements or dealings between National and Rockwood relating to the administration and handling of National's workers' compensation and employer's liability claims pursuant to the Policy, the Insurance Agreement, the Escrow Account Agreement, and any and all renewals, extensions or amendments of any applicable contract.

27.    This action seeks payment for obligations incurred by National and/or Ranger with respect to various workers' compensation and employer's liability claims adjusted by Rockwood pursuant to the Policy, the Insurance Agreement, the Escrow Account Agreement, and any renewals, extensions or amendments of any applicable contract.

## COUNT I

### ROCKWOOD CASUALTY INSURANCE COMPANY v. RANGER COAL HOLDINGS, LLC - BREACH OF CONTRACT

28.     Rockwood incorporates herein as if set forth in full paragraphs 1-27 of this Complaint.

29.     The Insurance Agreement, as amended by the Renewal Agreement Letters between Rockwood and National, set forth the contributions National was required to make to the Loss Fund as collateral security for the payment of National's Deductible Loss obligations.

30.     The Insurance Agreement provides "[a]ny failure of National to make timely payment as required shall be deemed by Rockwood and National to be National's request for immediate cancellation of all insurance coverage provided by Rockwood pursuant to this Agreement." Exhibit A at 4.

31.     In the course of Rockwood's adjustment of National's various workers' compensation and employer's liability claims a deficit arose in the Loss Fund in the amount of $1,343,934.

32.     To eliminate the deficit in the Loss Fund, by Renewal Agreement Letter dated November 11, 2010, Rockwood and National agreed to a Deficit Loss Funding Schedule pursuant to which National agreed to make monthly payments of $74,663.00 to the Loss Fund beginning November 15, 2010, through April 15, 2012. *See* Exhibit G.

33.     The parties agreed that the funding arrangement set forth in the November 11, 2010 Renewal Agreement Letter was "contingent upon National or its successor(s) continuing its Workers' Compensation and Employer's Liability coverage with Rockwood through April, 2012." Id.

34.     The parties further agreed in the November 11, 2010 Renewal Agreement Letter that if National or its successor terminated its coverage with Rockwood, the unpaid balance of the $1,343,934 Deficit Funding Amount would be due and payable to Rockwood within 20 days of any such termination of coverage. *See* Exhibit G.

35.     Pursuant to the November 11, 2010 Renewal Agreement Letter, National paid its first monthly payment of $74,663.00 under the Deficit Loss Funding Schedule on November 29, 2010.

36.     National merged into Ranger on December 15, 2010.

37.     Following National's merger into Ranger, Ranger failed to make any payments for December 2010 or January, February or March 2011.

38.     Pursuant to the Insurance Agreement, National's and Ranger's coverage with Rockwood for workers' compensation and employer's liability claims was terminated on March 3, 2011 for nonpayment.

39.     National's and Ranger's coverage for Federal Occupational Disease coverage with Rockwood was terminated on March 18, 2011 for nonpayment.

40.     Following the December 15, 2011 merger of National and Ranger and the subsequent termination of coverage for National with Rockwood, Ranger made Deficit Funding Schedule payments pursuant to the November 11, 2010 Renewal Agreement Letter on June 13, 2011 and August 15, 2011, to Rockwood for Rockwood's continued administration and handling of National's workers' compensation and employer's liability obligations existing prior to Rockwood's termination of applicable coverage.

41.     However, since August 15, 2011, Ranger has failed to make continuing payments pursuant to the Policy, the Insurance Agreement, the Escrow Account Agreement, the November

11, 2010 Renewal Agreement Letter and any renewals, extensions or amendments of any applicable contract.

42.     Thus, Ranger has breached its contractual obligations owed to Rockwood.

43.     At no time has National or Ranger ever disputed Rockwood's calculation of necessary reserves for National's and now Ranger's Deductible Loss Liability.

44.     Further, at no time did either National or Ranger ever deny their obligation to contribute to the Loss Fund as set forth in the Insurance Agreement and the annual Renewal Agreement Letters, including the November 11, 2010 Renewal Agreement Letter and amendments thereto.

45.     Under the terms and condition of its agreement with National and now Ranger, as of June 2012, Rockwood is entitled to approximately Nine Hundred and Sixty-Two Thousand and Five Hundred and Sixty-Nine Dollars ($962,569.00) for deductible collateral on National and/or Ranger's workers' compensation and employer's liability obligations.

46.     The amount due Rockwood may be adjusted to reflect the amount due at trial.


WHEREFORE, Rockwood Casualty Insurance Company demands judgment against Ranger Coal Holdings, LLC for a sum in excess of the arbitration limits, together with interest and costs of suit.

<u>COUNT II</u>

<u>ROCKWOOD CASUALTY INSURANCE COMPANY v.
RANGER COAL HOLDINGS, LLC - BREACH OF CONTRACT</u>

47.     Rockwood incorporates herein as if set forth in full paragraphs 1 - 46 of this Complaint.

48.     Alternatively, on or about August 18, 2011, representatives of Rockwood and Ranger met to review all of the open workers' compensation and employer's liability claims that Rockwood was administering and handling on behalf of Ranger at that time.

49.     During the meeting, Ranger's authorized representative acknowledged Ranger's responsibility for the Deductible Loss collateral payments owed to Rockwood to eliminate the deficit in the Loss Fund.

50.     On or about September 16, 2011, Rockwood and Ranger agreed upon and entered into a payment plan for the Deductible Loss collateral payments owed to Rockwood by Ranger ("Payment Plan"). A true and correct copy of the Payment Plan is attached as Exhibit H.

51.     Pursuant to the terms and conditions of the Payment Plan, Ranger agreed to pay Rockwood a monthly payment of $43,441.00 by the first of each month from October 1, 2011, through and including, August 1, 2013.

52.     Further, pursuant to the Payment Plan, Ranger agreed to pay Rockwood a final monthly payment of $43,450.00 on or by September 1, 2013.

53.     Despite its agreement with Rockwood under the Payment Plan, Ranger did not make any payment to Rockwood pursuant to the Payment Plan on or before October 1, 2011.

54.     On or about October 13, 2011, Ranger made a payment of $43,441, the amount that was due Rockwood pursuant to the Payment Plan on or by October 1, 2011.

55.     Ranger then failed to make the payments due to Rockwood on November 1, 2011 or December 1, 2011 pursuant to the Payment Plan.

56.     Ranger did not make another payment to Rockwood until paying Rockwood $43,441 on or about December 22, 2011.

57.     Ranger made another payment to Rockwood of $43,441 on or about February 17, 2012.

58.     On or about March 28, 2012, Ranger acknowledged its outstanding obligation to Rockwood for the Deductible Loss collateral payments.

59.     However, Ranger has not made any payment to Rockwood since February 17, 2012 under the Payment Plan or otherwise.

60.     Thus, Ranger has breached its contractual obligations owed to Rockwood under the Payment Plan.

61.     Under the terms and condition of its agreement with Ranger, as of June 2012, Rockwood is entitled to approximately Nine Hundred and Twelve Thousand and Two Hundred Seventy Dollars ($912,270.00) for Deductible Loss collateral on National and/or Ranger's workers' compensation and employer's liability obligations.

WHEREFORE, Rockwood Casualty Insurance Company demands judgment against Ranger Coal Holdings, LLC for a sum in excess of the arbitration limits, together with interest and costs of suit.

Respectfully submitted,

By: _Holly M. Whalen_

Dennis A. Watson, Esquire
Holly M. Whalen, Esquire

Grogan Graffam, P.C.
Firm I.D. No.:  072
Four Gateway Center, 12th Floor
Pittsburgh, PA  15222
(412) 553-6300
Our File No.: 62767-00002

*Counsel for Plaintiff*
*Rockwood Casualty Insurance Company*

## CORPORATE VERIFICATION

I, Frederick Ronald Davidson, hereby certify that I am authorized to make this verification on behalf of Rockwood Casualty Insurance Company, the Plaintiff in the foregoing lawsuit; that the said Complaint was prepared in specific reliance upon representations and documentation provided to me and other documents and information made available to me, and subject to inadvertent or undiscovered errors, limited by the records and information provided to me, presently in existence, recollected and thus far discovered in the course of said lawsuit; and that subject to the limitations set forth herein, the said Complaint is true and correct to the best of my knowledge, information and belief.

This Verification is made subject to the penalties of 18 Pa.C.S. §4904, relating to unsworn falsification to authorities.

ROCKWOOD CASUALTY INSURANCE COMPANY

By: _____

Frederick Ronald Davidson
AVP, Underwriting

Dated: _August 1, 2012_

INSURANCE AGREEMENT

THIS INSURANCE AGREEMENT ("Agreement") is entered into by Rockwood Casualty Insurance Company ("Rockwood") located at 654 Main Street, Rockwood, Pennsylvania 15557 and National Coal Corporation ("National") located at 8915 George Williams Road, Knoxville, Tennessee 37923.

WHEREAS, Rockwood is a Pennsylvania domiciled insurance carrier licensed to underwrite workers' compensation and employer's liability insurance coverage; and,

WHEREAS, National is in the business of coal mining and related activities; and,

WHEREAS, National wishes to purchase workers' compensation and employer's liability insurance coverage from Rockwood as insurer or as reinsurer of Argonaut Great Central Insurance Company, and Rockwood wishes to provide such insurance coverage to National; and,

WHEREAS, Rockwood and National wish to: 1) Set forth the terms and conditions under which Rockwood will provide workers' compensation and employer's liability insurance coverage to National; and 2) Establish an Escrow Account to hold the funds used to discharge the liabilities and obligations arising from Policy No. WC 9123703, its renewals and extensions (the "Policy").

NOW, THEREFORE, in consideration of the foregoing, and the covenants, conditions and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Rockwood and National agree as follows:

I.      TERM

     1.      The workers' compensation and employer's liability insurance coverage provided to National by Rockwood pursuant to this Agreement shall be effective for the period April 16, 2005 to April 16, 2006.

InsAgree.National.2005.doc

-1-



2.  Such coverage shall remain in full force and effect for the above referenced period subject to the terms and conditions of the Policy, applicable laws and regulations, and this Agreement.

II.  COVERAGE

1.  The Policy provided to National affords statutorily mandated workers' compensation and employer's liability insurance coverage.  The Policy is incorporated by reference herein.

2.  (a)  All workers' compensation and employer's liability coverage provided to National pursuant to this Agreement shall be subject to a deductible of $450,000.00 per occurrence and a $1,200,000.00 Annual Aggregate (the "Deductible Loss Liability").  (By way of explanation, a workers' compensation claimant who reports one traumatic claim and an occupational disease claim shall be deemed to have reported two separate occurrences.)

(b)  The Deductible Loss Liability shall include all Allocated Loss Adjustment Expense paid by Rockwood pursuant to its adjustment of claims arising under the Policy.

(c)  National shall be responsible to Rockwood for the payment of all such deductible amounts irrespective of the availability of funds in the Escrow Account to meet the Deductible Loss Liability.

III.  PREMIUM

1.  National shall make a deposit premium payment to Rockwood in the amount of $63,761.00.  This payment shall be delivered to Rockwood on or before April 16, 2005.

2.  Within fifteen (15) days after the close of each calendar month during the coverage term, National shall submit to Rockwood a monthly payroll report and premium remittance. The monthly premium due Rockwood shall be computed and paid at the rate of 55.72% of the Modified Standard Premium.  National's failure to submit the monthly payroll report and premium remittance to Rockwood as set forth above shall be deemed by Rockwood and National to be National's request to immediately cancel all insurance

coverage provided by Rockwood pursuant to this Agreement.   Any cancellation of insurance coverage pursuant to this paragraph shall be effected in accordance with the insurance laws and regulations of the State of Tennessee.

IV.    DEDUCTIBLE LOSS DEPOSIT

1.     (a)  National shall transfer a Deductible Loss Deposit to Rockwood in the amount of $150,000.00.  This payment shall be delivered to Rockwood on or before April 16, 2005.

(b)  This initial deposit and all additions thereto shall be used by Rockwood to pay claim losses falling within National's Deductible Loss Liability.

2.     Rockwood shall supplement National's initial Deductible Loss Deposit from time to time for the purpose of paying claims within National's Deductible Loss Liability.   The sources of such additional funding shall be the Deductible Loss Fund contained within the Escrow Account and additional contributions to be made by National upon Rockwood's request in the event of any shortfall in the Escrow Account.

3.     National hereby pledges and grants to Rockwood a security interest in and to all of National's right, title and interest in the initial $150,000.00 Deductible Loss Deposit and all future additions and contributions thereto and all income, accruals, dividends, profits, proceeds from, substitutions for and replacements thereof, to secure payment of all claims payable as Deductible Loss Liabilities under this Agreement and the Policy.  National shall execute and deliver such other instruments of conveyance, assignment, assumption, transfer and delivery and take such other action as Rockwood may request from time to time to maintain and perfect Rockwood's security interest in the Deductible Loss Deposit.  National further represents and warrants that it will keep the Deductible Loss Deposit free from all other liens and claims.

V.    DEDUCTIBLE LOSS FUND

1.    A Deductible Loss Fund (the "Loss Fund") shall be maintained in the Escrow Account established by Rockwood and National pursuant this Agreement.

2.    National shall contribute to the Loss Fund as follows:

(a)  Monthly payments to Rockwood shall be effected as set forth on Exhibit B attached hereto.  Any failure of National to make timely payment as required shall be deemed by Rockwood and National to be National's request for immediate cancellation of all insurance coverage provided by Rockwood pursuant to this Agreement.  Any cancellation of insurance coverage pursuant to this paragraph shall be effected in accordance with the insurance laws and regulations of the State of Tennessee.

(b)  In the event National's minimum monthly contribution as referenced in paragraph V. 2. (a) above is determined by Rockwood, in its sole discretion, to be insufficient to meet National's Deductible Loss Liability, including Incurred But Not Reported Losses, Rockwood and National shall jointly review such obligations and increase the contributions as mutually agreed.  If Rockwood and National fail to mutually agree on National's contribution level within twenty (20) calendar days of Rockwood's determination, such failure shall be deemed as National's request to Rockwood to immediately cancel all insurance coverage provided by Rockwood pursuant to this Agreement.  Any cancellation of insurance coverage pursuant to this paragraph shall be effected in accordance with the insurance laws and regulations of the State of Tennessee.

3.    National hereby pledges and grants to Rockwood a security interest in and to all of National's right, title and interest in and to the Loss Fund and all future contributions to the Loss Fund and all income, accruals, dividends, profits, proceeds from, substitutions for and replacements of the Loss Fund, to secure payment of all claims payable as Deductible Loss Liabilities under this Agreement and the Policy.  National shall execute and deliver such other instruments of conveyance, assignment, assumption, transfer and

delivery and take such other action as Rockwood may request from time to time to maintain and perfect Rockwood's security interest in the Deductible Loss Deposit. National further represents and warrants that it will keep the Deductible Loss Deposit free of all other liens and claims.

4.  Subject to the terms and conditions of escrow and the security interest created in this Agreement, ownership of all cash, securities and the like contained in the Loss Fund shall reside with National.

5.  All interest, dividends, profits and capital gains accruing too Loss Fund assets shall remain in the Loss Fund as additional collateral and shall be subject to the terms and conditions of escrow and the security interest created in this Agreement.

VI.  APPLICATION OF ESCROW ACCOUNT

Rockwood may, at its sole discretion and as it shall determine, apply funds contained in the Escrow Account to any liabilities and obligations of any type whatsoever arising from or relating to the Policy and any workers' compensation and employer's liability insurance agreements or other agreements of any type by which National may be obligated or liable to Rockwood.

VII.  PRIORITY FUNDING

1.  In the event any payment due Rockwood from National under this Agreement is not made in full and on schedule; then, such partial payment, if any, that is received by Rockwood shall be applied as follows:

(a) Escrow Account

(b) Any excess to Employer Assessments

(c) Any excess to Premium

2.  Nothing contained in paragraph 1. above shall serve to limit any right or remedy Rockwood may have under this Agreement, the Escrow Account, the Policy, or applicable laws and regulations.

InsAgree.National.2005.doc

VIII.   ADDITIONAL MATTERS

1.    This Agreement shall be binding upon and inure to the benefit of Rockwood and National and their respective heirs, executors, successors and assigns.

2.    This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania and any actions or claims brought or filed pursuant this Agreement shall be commenced in the Court of Common Pleas of Somerset County, Pennsylvania.

3.    No amendment, alteration or modification of this Agreement, including a waiver of this provision, shall be effective unless such amendment, alteration or modification is in writing and executed by the parties hereto.

4.    No delay, waiver, omission or forbearance on the part of Rockwood to exercise any right, option or power confirmed upon it by the terms of this Agreement shall be deemed a waiver by Rockwood of its right to enforce any such right, option or power.

5.    If any provision of this Agreement is held to be invalid, illegal or unenforceable, that shall not affect or impair in any way the validity, legality or enforceability of the remainder of this Agreement.

6.    Rockwood and National may, by addendum or letter agreement, add additional annual coverage periods to this Agreement, subject to mutual agreement as to terms and conditions.

7.    The Policy is incorporated by reference herein.

8.    The Escrow Account is incorporated by reference herein.

9.    This Agreement shall not be interpreted more or less favorable to one party than another due to the fact that one party rather than another drafted this Agreement or any portion thereof.

10.    The individuals executing this Agreement on behalf of the parties hereto represent that they have the requisite legal authority to bind such parties.

11.    The effective date of this Agreement shall be _April 16, 2005_

        IN WITNESS WHEREOF, the undersigned have caused this Agreement to be executed this _21st_ day of _July_____, 2005 with full intent to be legally bound hereby.

ATTEST _____                    ROCKWOOD CASUALTY INSURANCE COMPANY

                                                By _____
                                                Its President _____

ATTEST _____                    NATIONAL COAL CORPORATION

                                                By _____, CEO
                                                Its President

InsAgree.National.2005.doc

ESCROW ACCOUNT

THIS ESCROW ACCOUNT is entered into by Rockwood Casualty Insurance Company, located at 654 Main Street, Rockwood, Pennsylvania 15557 ("Rockwood"), and National Coal Corporation, located at 8915 George Williams Road, Knoxville, Tennessee 37923 ("National"), and First National Trust Company, located at 551 Main Street, Johnstown, Pennsylvania 15901 ("Escrow Agent").

WHEREAS, Rockwood as insurer or as reinsurer of Argonaut Great Central Insurance Company has issued workers' compensation and employer's liability policy no. WC 9123703 ("Policy") to National for the term commencing April 16, 2005 to April 16, 2006; and,

WHEREAS, Rockwood and National have entered into an Insurance Agreement ("Agreement") dated _July 21, 2005_ by which Rockwood and National have set forth, among other things, National's payment of premium to Rockwood and the funding and payment of National's obligations and liabilities to Rockwood under the Policy and Agreement; and,

WHEREAS, Section V 1. and 2. of the Agreement require National to make monetary contributions to a Deductible Loss Fund ("Loss Fund") to be held in this Escrow Account as collateral security for the payment of National's Deductible Loss Obligations under the Policy and Agreement.

NOW, THEREFORE, in consideration of the premises and the covenants, conditions and promises contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Rockwood and National agree as follows:

1.  National shall make contributions to the Loss Fund within the time frames and in such amounts as required by Section V 2. of the Agreement and grant Rockwood a security interest in the Loss Fund and all interest, dividends, profits and capital gains accruing thereto. All such contributions to the Loss

EscrowAccount.National.2005.doc

Fund shall be deposited by Rockwood in this Escrow Account as collateral security for National's Deductible Loss Obligations under the Policy and Agreement.

2.   Ownership of all cash, securities and the like contained in the Loss Fund shall reside with National subject to Rockwood's security interest and the terms of escrow.

3.   Deposits to the Escrow Account shall be made in cash by Rockwood and invested by Escrow Agent in securities that are eligible for investment under the insurance laws applicable to Rockwood as set forth on the Permitted Investment Schedule attached hereto as Exhibit A.  Escrow Agent will invest the cash deposits only as instructed in writing by Rockwood.  It shall be the responsibility of Rockwood alone, and Escrow Agent shall have no responsibility, to determine that the securities in the Escrow Account qualify as eligible investments for Rockwood and fall within the investment options set forth on Exhibit A.

4.   (a) The amounts on deposit in the Escrow Account shall be withdrawable by Rockwood or its successors in interest, to satisfy any debt, balance due, obligation, cost or liability relating to National's Deductible Loss Liability under the Policy and Agreement and to recover any fees, costs or expenses of any type that Rockwood may incur in protecting its right to and interest in the funds contained within the Escrow Account.

(b) The Loss Fund, including, but not limited to this Escrow Account, shall remain in escrow and subject to the terms of the Agreement until all possible claims payable as Deductible Loss Liabilities under the Policy and all renewals and extensions thereto have been determined and paid in full or otherwise finally disposed of.  In the event that the Loss Fund is not exhausted after the payment or other final disposition of all Deductible Loss Liabilities, then and only then, shall any remainder in the Loss Fund be released by Rockwood to National.  Any return of Loss Fund assets to National shall be subject to Rockwood's sole discretion and complete satisfaction that all Deductible Loss Liabilities have been satisfied in full.

- 2 -

5.   Withdrawals from the Escrow Account shall be made only by Rockwood upon written authorization executed by appropriate officers of Rockwood.  Escrow Agent shall have no duty to question or verify the basis for Rockwood's withdrawal of funds from the Escrow Account.

6.   All securities contained in this Escrow Account shall be in such form that Escrow Agent may sell, transfer or otherwise dispose of same without any signature or other assistance from any party except Rockwood.   Escrow Agent will not be responsible to make any determinations with respect to marketability of any securities which it is instructed to purchase.

Escrow Agent shall keep the securities received by it hereunder, separate and distinct from securities, documents and property owned by itself or others.

Escrow Agent is authorized and empowered to invest surplus income and principal cash from the Escrow Account into short-term money-market type investment funds with immediate access at all times and with no loss of principal.

Provided also that Escrow Agent may appoint and employ a nominee to register and hold in its name the securities contained within the Escrow Account.  Said nominee shall deal with such securities only as requested to do so by Escrow Agent acting pursuant to the instructions or directions of Rockwood as herein provided.

In making deposits into a Securities Depository or Safekeeping Facility or in registering securities in the name of Escrow Agent's nominee, Escrow Agent shall, at all times, keep complete and accurate records to the end that all securities may be identifiable (a) by the issuer or obligor of each security; (b) by the issue or distinguishing characteristics (such as due date and percentage rate of return based on face value) of each security; (c) by the Securities Depository Safekeeping Facility with which each security is placed; and (d) by the name of the nominee in whose name the security may be held.

EscrowAccount.National.2005.doc

Placement of securities by Escrow Agent into a Securities Depository or a Safekeeping Facility or into the name of Escrow Agent's nominee shall neither augment or diminish Escrow Agent's responsibilities and rights under any other paragraph of this Agreement.

Rockwood and National shall provide Escrow Agent with such documents and other assistance as may be reasonably required to effect sale or transfer. Income from investments in the escrow account shall be added to the account and shall be available for reinvestment as provided herein.

7.   Escrow Agent shall furnish to Rockwood and National a monthly statement ("Escrow Agent's Statement") of the cash balance on deposit, a market value statement and account activity accurate to the best of its knowledge, of securities held in the Escrow Account. If securities must be sold to provide funds for any withdrawals, Rockwood will instruct Escrow Agent in writing as to which securities to sell. In the case of such sales, withdrawal payments will be made by Escrow Agent to Rockwood or to its order as soon as practicable after receipt by Escrow Agent of the proceeds of sale.

8.   Escrow Agent shall have no obligation under this Escrow Account other than to accept cash for deposit and invest escrow account funds in accordance with the terms hereof. Escrow Agent shall have no duty or obligation hereunder other than to take such specific actions as are required of it from time to time under the provisions hereof, and it shall incur no liability hereunder or in connection herewith for anything whatsoever other than its own negligence, default or willful misconduct or neglect.

9.   This Escrow Account may be executed in as many counterparts as may be deemed necessary and convenient, each of which, when so executed, shall be deemed an original, but all such counterparts shall constitute but one and the same instrument. Rockwood, National and Escrow Agent shall each retain one executed copy of this Escrow Account.

10.  This Escrow Account may be altered or amended only with the written consent of all of the parties hereto. Rockwood may terminate this Escrow Account at any time by giving sixty (60) days prior written notice to Escrow Agent and to National. Rockwood may appoint another Escrow Agent

mutually acceptable to National. Should Rockwood attempt to change this Escrow Account in a manner that would either increase the duties or responsibilities of Escrow Agent or which in the sole and absolute discretion of Escrow Agent is deemed undesirable, Escrow Agent may resign by notifying Rockwood and National in writing and until a successor to Escrow Agent is appointed by National and Rockwood in writing and accepts such appointment, Escrow Agent's only duty shall be to hold the amount on deposit in accordance with the original instructions contained in this Escrow Account.

11.   Any notice, statement or other communication required to be given by Escrow Agent may be delivered by messenger, or forwarded by certified mail to the address of Rockwood and National as indicated above or any new address which may be provided to Escrow Agent in writing by Rockwood and National from time to time. Any notice, statement or other communication to Escrow Agent should be sent in a similar manner to the address set forth above.

12.   To induce Escrow Agent to act hereunder, it is further agreed by the undersigned that:

    (a)   Escrow Agent

        (i)   Shall not be under any duty to give property held hereunder any greater degree of care than it gives its own similar property, and

        (ii)   Shall not be required to invest any funds held hereunder unless so directed herein.

    (b)   Escrow Agent shall make no representation as to the validity, value, genuineness or the collectability of any security or other document or instrument held by or delivered to it.

    (c)   Escrow Agent shall not be called upon to advise Rockwood as to the wisdom of selling or retaining any securities deposited hereunder.

    (d)   Escrow Agent does not have and will not have any interest in the securities, or any of them, deposited hereunder but is serving only as an escrow holder and having only possession thereof.

(e)  Escrow Agent, upon receipt of Rockwood's written approval, may deduct and reimburse itself from escrow account funds for all transfer taxes, brokerage fees, costs and other similar charges paid by Escrow Agent pursuant to its authority hereunder.

(f)  Escrow Agent may act in reliance upon any instrument or signature believed to be genuine and may assume that any person purporting to give any writing, notice, advice or instruction in connection with the provisions hereof has been duly authorized to do so.

(g)  Escrow Agent shall be entitled to compensation for escrow services rendered pursuant to this Escrow Account in accordance with a separate letter of agreement incorporated by reference herein. All such fees due Escrow Agent under the letter of agreement shall be deducted from the Escrow Account by Escrow Agent upon receipt of Rockwood's written approval.

13. This Escrow Account shall be construed and enforced according to the laws of the Commonwealth of Pennsylvania.

14. The rights created by this Escrow Account shall inure to the benefit of, and the obligations created hereby shall be binding upon, the heirs, administrators, representatives, successors and assigns of Escrow Agent, Rockwood and National.

15. The Insurance Agreement entered into by and between Rockwood and National and the Policy and all renewals and extensions thereto are incorporated by reference herein.

16. Escrow Agent acknowledges and affirms Rockwood's security interest in the funds contained in the Escrow Account and waives any interest it may have to set off such funds against any claims of any type or amount which Escrow Agent may have now or in the future against Rockwood or National.

ADDITIONAL MATTERS

1.      This Escrow Account shall be governed by and construed in accordance with the laws and regulations of the Commonwealth of Pennsylvania.

- 6 -

2.      Any disputes under this Escrow Account shall be determined before the Court of Common Pleas of Somerset County, Pennsylvania.  The parties hereto consent to the jurisdiction of such court.

3.      This Escrow Account may not be altered or amended in any way absent a writing executed by the parties hereto.

4.      The individuals executing this Escrow Account on behalf of the parties hereto represent that they have the requisite authority to bind such parties.

5.      The benefits, rights, obligations and responsibilities set forth in this Escrow Account shall inure to the parties hereto and their respective successors and assigns.

6.      No delay, waiver, omission or forbearance on the part of Rockwood to exercise any right, option or power confirmed upon it by the terms of this Escrow Account shall be deemed a waiver by Rockwood of its right to enforce any such right, option or power.

7.      If any provision of this Agreement is held to be invalid, illegal or unenforceable, that shall not affect or impair in any way the validity, legality or enforceability of the remainder of this Agreement.

8.      In the event Rockwood and National extend or renew their workers' compensation insurance relationship beyond the current April 16, 2005 to April 16, 2006 policy period; then, any collateral that may be required for such extensions or renewals shall be deposited in this Escrow Account and maintained and administered pursuant to the terms and conditions stated herein.

9.      The funds deposited into this Escrow Account pursuant the _April 16, 2005_ Insurance Agreement, or any future workers' compensation and employer's liability insurance agreements, between Rockwood and National shall be available to and may be used by Rockwood, without limitation, to satisfy any liability or obligations whatsoever that National may have to Rockwood, arising out of the _April 16, 2005_ Insurance Agreement or any future workers' compensation and employer's liability insurance agreements, irrespective of policy period, date of claim or nature of the liability or obligation.

10.     This Escrow Account shall not be construed more or less favorable to one party or the other due to the fact that the Escrow Account was drafted by one party and not the other.

- 7 -

EXHIBIT A

PERMITTED INVESTMENT SCHEDULE

a)   U. S. Treasury Bills and Notes guaranteed by
     the United States Government;

b)   Federal Agency securities:

c)   Negotiable Certificates of Deposit issued by any U. S.
     bank;

d)   Investments in A-1/P-1 Commercial Paper;

e)   Corporate bonds or notes less than 10 years to maturity
     with a Standard & Poor's bond rating of at least BBB+ or
     equivalent;

f)   Money Market type funds;

g)   Mutual Funds containing any of the types of securities
     set forth in (a) through (e) above.

EXHIBIT B

LOSS FUND PAYMENT SCHEDULE

| PMT # | DUE DATE | AMOUNT DUE |
|---|---|---|
| INITIAL | April 16, 2005 | $150,000 |
| 1 | May 15, 2005 | $68,180 |
| 2 | June 15, 2005 | $68,182 |
| 3 | July 15, 2005 | $68,182 |
| 4 | August 15, 2005 | $68,182 |
| 5 | September 15, 2005 | $68,182 |
| 6 | October 15, 2005 | $68,182 |
| 7 | November 15, 2005 | $68,182 |
| 8 | December 15, 2005 | $68,182 |
| 9 | January 15, 2006 | $68,182 |
| 10 | February 15, 2006 | $68,182 |
| 11 | March 15, 2006 | $68,182 |
| 12 | April 15, 2006 | $0 |
| 13 | May 15, 2006 | $0 |
| | TOTAL | $900,000 |

IN WITNESS WHEREOF, the undersigned have caused this Escrow Account to be executed this _21ST_ day of _July_____, 2005, with full intent to be legally bound hereby.

ATTEST

_____

ROCKWOOD CASUALTY INSURANCE COMPANY

By_____
Its President

ATTEST

_____

NATIONAL COAL CORPORATION

By_____
Its President

ATTEST

_____

FIRST NATIONAL TRUST COMPANY

By_____

Its _____

ADDENDUM NO. 1
TO
INSURANCE AGREEMENT
AND
ESCROW ACCOUNT

THIS ADDENDUM NO. 1 is entered into by Rockwood Casualty Insurance Company (Rockwood) and National Coal Corporation (National).

WHEREAS, National has retained Kelco Energy, Inc. (Kelco) to perform mining activities at National Coal #1 Free Dome Mine; and,

WHEREAS, National has retained Roco Enterprises, Inc. (Roco) to perform mining activities at National Coal #3 Highwall; and

WHEREAS, National is insured by Rockwood under workers' compensation and employer's liability policy no. WC 9123703 (Policy); and

WHEREAS, Labor Contractor Endorsement WC 00 03 20A has been added to the Policy; thus providing workers' compensation and employer's liability coverage to Kelco and Roco; and,

WHEREAS, Rockwood requires that any losses under the Policy with respect to Kelco and Roco shall be subject to the terms and conditions of the Insurance Agreement and Escrow Account entered into by Rockwood and National on April 16, 2005.

NOW, THEREFORE, in consideration of the premises, the payment of premium, the issuance of insurance coverage and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1)   The Labor Contractor Endorsement WC 00 03 20A for Kelco and Roco is incorporated by reference herein.

2)   Losses paid under the Policy with respect to Kelco and Roco shall be subject to the Insurance Agreement and Escrow Account and paid with funds provided by National to Rockwood pursuant Insurance Agreement section IV, Deductible Loss Deposit and section V, Deductible Loss Fund.

Page 1 of 2

AddendumNo 1 National 2005.doc

3)   Except as stated herein, this Addendum No. 1 does not change any term or condition of the

Insurance Agreement or Escrow Account.

The signatories hereto execute this Addendum No. 1 this _29 TH_ day of _November_ , 2005

with intent to be legally bound hereby.

WITNESS

ROCKWOOD CASUALTY INSURANCE COMPANY

By_____

Its_____

WITNESS

NATIONAL COAL COPORATION

By_____

Its_____



Rockwood.
MEMBER ARGONAUT GROUP

P. O. Box 128
654 Main Street Rockwood, PA  15557

(800) 837-9062
(814) 926-4661

FAX (814)926-4070 -Claims
FAX (814)926-3027 -Underwriting

July 6, 2006

National Coal Corporation
8915 George Williams Road
Knoxville, TN  37923

Gentlemen:

Rockwood Casualty Insurance Company (Rockwood) is pleased to continue its Workers' Compensation and Employer's Liability insurance relationship with National Coal Corporation (National) for the one year period commencing April 16, 2006 to April 16, 2007.  The new policy number is WC 9125036.

The Insurance Agreement entered into by Rockwood and National dated April 16, 2005 shall apply to policy number WC 9125036 and be amended as follows:

> II. 2. (a)  The per occurrence deductible shall be changed from $450,000.00 to $600,000.00 and the annual aggregate shall be changed from $1,200,000.00 to $1,500,000.00.

> III. 2.  The second sentence in this paragraph is deleted in its entirety and replaced with the following:  "The monthly premium due Rockwood shall be computed and paid based on a premium factor of 43.32%."

> V. 2. (a)  The first sentence of this paragraph shall be deleted in its entirety and replaced with the following:  "Monthly payments to Rockwood by National shall be made as set-forth on Exhibit B attached hereto."

The Escrow Account entered into by Rockwood and National dated April 16, 2005 is available to and may be used by Rockwood, without limitation, to satisfy any liability or obligation that National may have to Rockwood under the various Workers' Compensation and Employer's Liability insurance policies issued by Rockwood to National irrespective of policy period, date of claim or nature of liability or obligation.  Thus, the Escrow Account shall be available to Rockwood to satisfy any liability or obligation that National may have to Rockwood which arises out of policy nos. WC 9123703 and WC 9215036, and all related agreements and undertakings.

Please have the appropriate officer of National execute and witness this letter, indicating National's agreement with and acceptance of the contents hereof, and their intent to be legally bound hereby.

By the signature of John P. Yediny, below, Rockwood agrees with and accepts the contents of this letter and agrees to be legally bound hereby.

Sincerely,

John P. Yediny
President and CEO
Rockwood Casualty Insurance Company

EXHIBIT

B



P. O. Box 128                    (800) 837-9062    FAX (814)926-4070 - Claims
654 Main Street Rockwood, PA  15557   (814) 926-4661    FAX (814)926-3027 - Underwriting

National Coal Corporation
Page two

The foregoing is agreed and accepted this _25th_ day of ___FEBRUARY___, _2007_.

WITNESS                                        NATIONAL COAL CORPORATION

_____  2/20/07                 by_____
                                               its ~~President~~
                                                   CFO



**Rockwood.**
MEMBER ARGONAUT GROUP

P. O. Box 128
654 Main Street Rockwood, PA  15557

(800) 837-9062
(814) 926-4661

FAX (814)926-4070 -Claims
FAX (814)926-3027 -Underwriting

National Coal Corporation
Page two

Exhibit B
Loss Funding Payment Schedule

| PAYMENT # | DUE DATE | AMOUNT DUE | |
|---|---|---|---|
| INITIAL PMT | April 16, 2006 | $ | - |
| 1 | May 15, 2006 | $ | 23,270 |
| 2 | June 15, 2006 | $ | 23,269 |
| 3 | July 15, 2006 | $ | 23,269 |
| 4 | August 15, 2006 | $ | 23,269 |
| 5 | September 15, 2006 | $ | 23,269 |
| 6 | October 15, 2006 | $ | 23,269 |
| 7 | November 15, 2006 | $ | 23,269 |
| 8 | December 15, 2006 | $ | 23,269 |
| 9 | January 15, 2007 | $ | 23,269 |
| 10 | February 15, 2007 | $ | 23,269 |
| 11 | March 15, 2007 | $ | 23,269 |
| 12 | April 15, 2007 | $ | 23,269 |
| | **TOTAL** | $ | **279,229** |

 **Rockwood.**
MEMBER ARGONAUT GROUP

P. O. Box 128
654 Main Street Rockwood, PA 15557

(800) 837-9062
(814) 926-4661

FAX (814)926-4070 -Claims
FAX (814)926-3027 -Underwriting

June 11, 2007

National Coal Corporation
8915 George Williams Road
Knoxville, TN 37923

Gentlemen:

Rockwood Casualty Insurance Company (Rockwood) is pleased to continue its Workers' Compensation and Employer's Liability insurance relationship with National Coal Corporation (National) for the one year period commencing April 1, 2007 to April 1, 2008.  The new policy number is WC 9126064.

The Insurance Agreement entered into by Rockwood and National dated April 16, 2005 is amended with respect to policy number WC 9126064 as follows:

> II. 2. (a)  The per occurrence deductible shall be $750,000.00 and the annual aggregate shall be $1,650,000.00.

> III. 2.  The second sentence in this paragraph shall be deleted in its entirety and replaced with the following:  "The monthly premium due Rockwood shall be computed and paid based on a premium factor of 41.05%."

> V. 2. (a)  The first sentence of this paragraph shall be deleted in its entirety and replaced with the following:  "Deposits to the Loss Fund shall be made as set-forth on Exhibit B attached hereto."

The Insurance Agreement entered into by Rockwood and National on April 16, 2005, as amended, shall be applicable to policy number WC 9126064 and otherwise remain in full force and effect.

The Escrow Account entered into by Rockwood and National dated April 16, 2005 shall be available to and may be used by Rockwood, without limitation, to satisfy any liability or obligation that National may have to Rockwood under the various Workers' Compensation and Employer's Liability insurance policies issued by Rockwood to National irrespective of policy period, date of claim or nature of liability or obligation.  Thus, the Escrow Account shall be available to Rockwood to satisfy any liability or obligation that National may have to Rockwood which arises out of policy nos. WC 9123703, WC 9215036 and WC 9126064 and all related agreements and undertakings.

Please have the appropriate officer of National execute and witness this letter, indicating National's agreement with and acceptance of the contents hereof, and their intent to be legally bound hereby.



EXHIBIT

C



**Rockwood™**
MEMBER ARGONAUT GROUP

P. O. Box 128                    (800) 837-9062     FAX (814)926-4070 -Claims
654 Main Street Rockwood, PA  15557     (814) 926-4661     FAX (814)926-3027 -Underwriting

By the signature of John P. Yediny, below, Rockwood agrees with and accepts the contents of this letter and agrees to be legally bound hereby.

Sincerely,

~~John P. Yediny~~
President and CEO
Rockwood Casualty Insurance Company
National Coal Corporation
Page two

The foregoing is agreed and accepted this ___3___ day of ___July___, __2007__

WITNESS

NATIONAL COAL CORPORATION

by _____
its ~~President~~
   CFO


**Rockwood™**
MEMBER ARGONAUT GROUP

P. O. Box 128                                    (800) 837-9062        FAX (814)926-4070 -Claims
654 Main Street Rockwood, PA  15557   (814) 926-4661        FAX (814)926-3027 -Underwriting

Exhibit B

Loss Funding Payment Schedule

| Payment # | Due Date | Escrow 1 Amount |
|---|---|---|
| Loss Fund Deposit | April 1, 2007 | 0 |
| 1 | May 15, 2007 | 16,663 |
| 2 | June 15, 2007 | 16,667 |
| 3 | July 15, 2007 | 16,667 |
| 4 | August 15, 2007 | 16,667 |
| 5 | September 15, 2007 | 16,667 |
| 6 | October 15, 2007 | 16,667 |
| 7 | November 15, 2007 | 16,667 |
| 8 | December 15, 2007 | 16,667 |
| 9 | January 15, 2008 | 16,667 |
| 10 | February 15, 2008 | 16,667 |
| 11 | March 15, 2008 | 16,667 |
| 12 | April 15, 2008 | 16,667 |
| Total | | 200,000 |



ROCKWOOD

Member byer Group

P. O. Box 128
654 Main Street Rockwood, PA  15557

(800) 837-9062
(814) 926-4661

FAX (814)926-4070 -Claims
FAX (814)926-3027 -Underwriting

April 28, 2008

National Coal Corporation
8915 George Williams Road
Knoxville, TN  37923

Gentlemen:

Rockwood Casualty Insurance Company (Rockwood) is pleased to continue its Workers' Compensation and Employer's Liability insurance relationship with National Coal Corporation (National) for the one year period commencing April 1, 2008 to April 1, 2009.  The new policy number is WC 9126980.

The Insurance Agreement entered into by Rockwood and National dated April 16, 2005 is amended with respect to policy number WC 9126980 as follows:

> III. 2.  The second sentence in this paragraph shall be deleted in its entirety and replaced with the following:  "The monthly premium due Rockwood shall be computed and paid based on a premium factor of 42.18%."

> V. 2. (a)  The first sentence of this paragraph shall be deleted in its entirety and replaced with the following: "Deposits to the Loss Fund shall be made as set-forth on Exhibit B attached hereto."

The Insurance Agreement entered into by Rockwood and National on April 16, 2005, as amended, shall be applicable to policy number WC 9126980 and otherwise remain in full force and effect.

The Escrow Account entered into by Rockwood and National dated April 16, 2005 shall be available to and may be used by Rockwood, without limitation, to satisfy any liability or obligation that National may have to Rockwood under the various Workers' Compensation and Employer's Liability insurance policies issued by Rockwood to National irrespective of policy period, date of claim or nature of liability or obligation.  Thus, the Escrow Account shall be available to Rockwood to satisfy any liability or obligation that National may have to Rockwood which arises out of policy no. WC 9126980 and all prior and future related agreements and undertakings.

Please have the appropriate officer of National execute and witness this letter, indicating National's agreement with and acceptance of the contents hereof, and their intent to be legally bound hereby.

By the signature of John P. Yediny, below, Rockwood agrees with and accepts the contents of this letter and agrees to be legally bound hereby.

Sincerely,

John P. Yediny
President and CEO
Rockwood Casualty Insurance Company

EXHIBIT

**ROCKWOOD**

Member Argo Group

P. O. Box 128                    (800) 837-9062      FAX (814)926-4070 -Claims
654 Main Street Rockwood, PA  15557    (814) 926-4661      FAX (814)926-3027 -Underwriting

National Coal Corporation
Page two

The foregoing is agreed and accepted this _21_ day of _May_____, _2008_.

WITNESS                                  NATIONAL COAL CORPORATION

_Sylvia Joy Witoff_                      by_Micl R Clo_
                                         ˙Senior Vice President
                                         Chief Financial Officer

 **ROCKWOOD**
*Worker Argus Group*

P. O. Box 128                          (800) 837-9062      FAX (814)926-4070 -Claims
654 Main Street Rockwood, PA  15557   (814) 926-4661      FAX (814)926-3027 -Underwriting

Exhibit B

Loss Funding Payment Schedule

| Payment # | Due Date | Escrow I Amount |
|---|---|---|
| Loss Fund Deposit | April 1, 2008 | 0 |
| 1 | May 15, 2008 | 58,337 |
| 2 | June 15, 2008 | 58,333 |
| 3 | July 15, 2008 | 58,333 |
| 4 | August 15, 2008 | 58,333 |
| 5 | September 15, 2008 | 58,333 |
| 6 | October 15, 2008 | 58,333 |
| 7 | November 15, 2008 | 58,333 |
| 8 | December 15, 2008 | 58,333 |
| 9 | January 15, 2009 | 58,333 |
| 10 | February 15, 2009 | 58,333 |
| 11 | March 15, 2009 | 58,333 |
| 12 | April 15, 2009 | 58,333 |
| Total | | 700,000 |

 ROCKWOOD

*Member Argo Group*

P. O. Box 128
654 Main Street Rockwood, PA  15557

(800) 837-9062
(814) 926-4661

FAX (814)926-4070 -Claims
FAX (814)926-3027 -Underwriting

June 17, 2009

National Coal Corporation
8915 George Williams Road
Knoxville, TN  37923

Gentlemen:

Rockwood Casualty Insurance Company (Rockwood) is pleased to continue its Workers' Compensation and Employer's Liability insurance relationship with National Coal Corporation (National) for the one year period commencing April 1, 2009 to April 1, 2010.  The new policy number is WC 9127964.

The Insurance Agreement entered into by Rockwood and National dated April 16, 2005 is amended with respect to policy number WC 9127964 as follows:

> Rockwood shall provide workers' compensation and employer's liability insurance coverage to National under policy number WC 9127964 as insurer or as reinsurer of Argonaut Insurance Company.

> The coverage provided under policy number WC 9127964 shall be for National's operations in the state of Tennessee only.

> III. 1.   The $76,029 premium deposit on account with Rockwood with respect to policy number WC 9126980 shall be transferred to policy number WC 9127964. However, in the event National does not report and pay premium to Rockwood for policy number WC 9127964 when due; then, Rockwood may, at its sole discretion, require National's payment of premium deposit in the full amount of $89,668 for policy number WC 9127964.  National's reporting and payment of premium to Rockwood shall be reviewed quarterly, contemporaneous with the loss analysis review.

> III. 2.  The monthly premium due Rockwood shall be computed and paid based on a premium factor of 40.40%.

> V. 2. (a)  Deposits to the Loss Fund, including Deficit Funding, shall be made as set-forth on Exhibit B attached hereto.

> The full Deficit Funding amount due Rockwood from National is $450,000. However, Rockwood and National have mutually agreed to provisionally reduce the $450,000 amount to $225,000 subject to a quarterly loss analysis to be performed by Rockwood on July 1, 2009, October 1, 2009, January 1, 2010 and April 1, 2010.  If the losses trend favorably as projected, the agreed upon $225,000 Deficit Funding level shall remain in place through the expiration of policy number WC 9127964.   However, if the losses trend less favorably than projected, Rockwood and National shall mutually determine the amount by which the provisional $225,000 Deficit Funding amount will be increased.  In the absence of such agreement, Rockwood shall, in its sole discretion, increase the provisional amount as it determines.

EXHIBIT

tabbies

E

 ROCKWOOD
*Member Argo Group*

P. O. Box 128                     (800) 837-9062    FAX (814)926-4070 -Claims
654 Main Street Rockwood, PA 15557    (814) 926-4661    FAX (814)926-3027 -Underwriting

National Coal Corporation
Page two

The Insurance Agreement entered into by Rockwood and National on April 16, 2005, as amended, shall be applicable to policy number WC 9127964 and otherwise remain in full force and effect.

The Escrow Account entered into by Rockwood and National dated April 16, 2005 shall be available to and may be used by Rockwood, without limitation, to satisfy any liability or obligation that National may have to Rockwood under the various Workers' Compensation and Employer's Liability insurance policies issued by Rockwood to National irrespective of policy period, date of claim or nature of liability or obligation. Thus, the Escrow Account shall be available to Rockwood to satisfy any liability or obligation that National may have to Rockwood which arises out of policy no. WC 9127964 and all prior and future related agreements and undertakings.

Please have the appropriate officer of National execute and witness this letter, indicating National's agreement with and acceptance of the contents hereof, and their intent to be legally bound hereby.

By the signature of John P. Yediny, below, Rockwood agrees with and accepts the contents of this letter and agrees to be legally bound hereby.

Sincerely,

John P. Yediny
President and CEO
Rockwood Casualty Insurance Company

The foregoing is agreed and accepted this ___13th___ day of _____July_____, __2009__.

WITNESS                               NATIONAL COAL CORPORATION

_____            by _____
                                        Les H. Wagner, Treasurer

 ROCKWOOD

*Member Argo Group*

P. O. Box 128
654 Main Street Rockwood, PA  15557

(800) 837-9062
(814) 926-4661

FAX (814)926-4070 -Claims
FAX (814)926-3027 -Underwriting

Exhibit B

Loss Funding Payment Schedule

| Payment # | Due Date | Escrow I Amount | Deficit Funding |
|---|---|---|---|
| Loss Fund Deposit | April 1, 2009 | 0 | 0 |
| 1 | May 15, 2009 | 54,163 | 10,000 |
| 2 | June 15, 2009 | 54,167 | 10,000 |
| 3 | July 15, 2009 | 54,167 | 10,000 |
| 4 | August 15, 2009 | 54,167 | 10,000 |
| 5 | September 15, 2009 | 54,167 | 10,000 |
| 6 | October 15, 2009 | 54,167 | 10,000 |
| 7 | November 15, 2009 | 54,167 | 27,500 |
| 8 | December 15, 2009 | 54,167 | 27,500 |
| 9 | January 15, 2010 | 54,167 | 27,500 |
| 10 | February 15, 2010 | 54,167 | 27,500 |
| 11 | March 15, 2010 | 54,167 | 27,500 |
| 12 | April 15, 2010 | 54,167 | 27,500 |
| Total | | 650,000 | 225,000 |



**ROCKWOOD**
*Member Argo Group*

P. O. Box 128
654 Main Street Rockwood, PA  15557

(800) 837-9062
(814) 926-4661

FAX (814)926-4070 -Claims
FAX (814)926-3027 -Underwriting

May 11, 2010

National Coal Corporation
8915 George Williams Road
Knoxville, TN  37923

Gentlemen:

Rockwood Casualty Insurance Company (Rockwood) is pleased to continue its Workers' Compensation and Employer's Liability insurance relationship with National Coal Corporation (National) for the one year period commencing April 1, 2010 to April 1, 2011.  The new policy number is WC 9128435.

The Insurance Agreement entered into by Rockwood and National dated April 16, 2005 is amended with respect to policy number WC 9128435 as follows:

II. 2. (a)  The minimum annual aggregate shall be $1,100,000 subject to a final calculation at the close of the policy period that shall set the final annual aggregate at an amount equal to 11.94% of the total audited payroll.

III. 1.  The $76,029 premium deposit on account with Rockwood with respect to policy number WC 9127964 shall be transferred to policy number WC 9128435.

III. 2.  The monthly premium due Rockwood shall be computed and paid based on a premium factor of 46.16%.

V. 2. (a)  Deposits to the Loss Fund and payment of the Deficit Funding amount shall be made as follows:

- Loss Fund deposits shall be calculated at the rate of 7.3% of total reported payroll and paid to Rockwood by National commencing on May 15, 2010 and on the 15th of each successive month thereafter through and including April 15, 2011.

- The full Deficit Funding amount due Rockwood from National is $930,000.  However, Rockwood and National have mutually agreed to provisionally reduce the $930,000 amount to $465,000 subject to a six month loss analysis to be performed by Rockwood on October 1, 2010.  If the losses trend favorably as projected, the agreed upon $465,000 Deficit Funding amount shall remain in place through the expiration of policy number WC 9128435.  However, if the losses trend less favorably than projected, Rockwood and National shall mutually determine the amount by which the provisional $465,000 Deficit Funding amount will be increased.  In the absence of such agreement, Rockwood shall, in its sole discretion, increase the provisional amount as it determines.



EXHIBIT

F


ROCKWOOD

*Member Argo Group*

P. O. Box 128
654 Main Street Rockwood, PA  15557

(800) 837-9062
(814) 926-4661

FAX (814)926-4070 -Claims
FAX (814)926-3027 -Underwriting

National Coal Corporation
Page two

Provisional Deficit Funding amounts shall be paid to Rockwood by National in accordance with Exhibit A attached hereto.  In the event the Provisional Deficit Funding amount is increased, Rockwood shall adjust the payment schedule on Exhibit A to reflect such increase.

The above mentioned Deficit Funding arrangement is contingent upon National continuing its Workers' Compensation and Employer's Liability coverage with Rockwood.  In the event such coverage is terminated for any reason by National or otherwise; then, the balance of the $930,000 Deficit Funding amount shall be immediately due and payable to Rockwood.

The Insurance Agreement entered into by Rockwood and National on April 16, 2005, as amended, shall be applicable to policy number WC 9128435 and otherwise remain in full force and effect.

The Escrow Account entered into by Rockwood and National dated April 16, 2005 shall be available to and may be used by Rockwood, without limitation, to satisfy any liability or obligation that National may have to Rockwood under the various Workers' Compensation and Employer's Liability insurance policies issued by Rockwood to National irrespective of policy period, date of claim or nature of liability or obligation.  Thus, the Escrow Account shall be available to Rockwood to satisfy any liability or obligation that National may have to Rockwood which arises out of policy number WC 9128435 and all prior and future related agreements and undertakings.

Please have the appropriate officer of National execute and witness this letter, indicating National's agreement with and acceptance of the contents hereof, and their intent to be legally bound hereby.

By the signature of John P. Yediny, below, Rockwood agreed with and accepts the contents of this letter and agrees to be legally bound hereby.

Sincerely,

John P. Yediny
President and CEO
Rockwood Casualty Insurance Company

The foregoing is agreed and accepted this ___30th___ day of ___August___, 2010.

WITNESS                                   NATIONAL COAL CORPORATION

By _____
Its President

 **ROCKWOOD**

*Member Argo Group*

P. O. Box 128                    (800) 837-9062        FAX (814)926-4070 -Claims
654 Main Street Rockwood, PA  15557   (814) 926-4661     FAX (814)926-3027 -Underwriting

National Coal Corporation
Page 3

Exhibit A

Deficit Loss Funding Schedule

| Payment # | Due Date | Deficit Funding |
|---|---|---|
| Loss Fund Deposit | April 1, 2010 | 0 |
| 1 | May 15, 2010 | 38,750 |
| 2 | June 15, 2010 | 38,750 |
| 3 | July 15, 2010 | 38,750 |
| 4 | August 15, 2010 | 38,750 |
| 5 | September 15, 2010 | 38,750 |
| 6 | October 15, 2010 | 38,750 |
| 7 | November 15, 2010 | 38,750 |
| 8 | December 15, 2010 | 38,750 |
| 9 | January 15, 2011 | 38,750 |
| 10 | February 15, 2011 | 38,750 |
| 11 | March 15, 2011 | 38,750 |
| 12 | April 15, 2011 | 38,750 |
| Total | | 465,000 |


ROCKWOOD
Member Argo Group

P. O. Box 128                    (800) 837-9062     FAX (814)926-4070 -Claims
654 Main Street Rockwood, PA  15557   (814) 926-4661   FAX (814)926-3027 -Underwriting

November 11, 2010

National Coal Corporation
8915 George Williams Road
Knoxville, TN  37923

Gentlemen:

Pursuant to the May 11, 2010 renewal agreement entered into by Rockwood Casualty Insurance Company (Rockwood) and National Coal Corporation (National), a six month loss analysis was conducted by Rockwood on October 1, 2010.  The results of this analysis indicated that National's losses have trended significantly higher than initially forecasted.  Consequently, Rockwood and National, as provided by the renewal agreement, have agreed to increase the amount and duration of National's deficit loss funding obligations to Rockwood.

The Deficit Loss Funding Schedule for the final six months of policy number WC 9128435 is set forth on Schedule A, attached hereto.

The Deficit Loss Funding Schedule for the subsequent April 1, 2011 to April 1, 2012 policy period is set forth on Schedule B, attached hereto.  The funding amounts contained therein are subject to additional adjustment pending further negative loss development.

The agreed upon Deficit Loss Funding arrangement set forth above is contingent upon National or its successor(s) continuing its Workers' Compensation and Employer's Liability coverage with Rockwood through April, 2012.  In the event such coverage is terminated for any reason by National or its successor(s); then, the balance of the $1,343,934 Deficit Funding amount shall be due and payable to Rockwood within twenty (20) days of any such termination.

The contents of this letter shall serve as an amendment to the May 11, 2010 renewal agreement.  The Insurance Agreement as amended and the Escrow Account shall otherwise remain in full force and effect.

Please have the President of National execute this letter, indicating National's agreement with and acceptance of the contents herein, and its intent to be legally bound hereby.

By the signature of John P. Yediny, below, Rockwood agrees with and accepts the contents of this letter and agrees to be legally bound hereby.

Sincerely,

John P. Yediny
President and CEO
Rockwood Casualty Insurance Company

The foregoing is agreed and accepted this 18 th day of November , 2010.

WITNESS                                          NATIONAL COAL CORPORATION

By
Its President

EXHIBIT

G

 **ROCKWOOD**
*Member Argo Group*

P. O. Box 128
654 Main Street Rockwood, PA  15557

(800) 837-9062
(814) 926-4661

FAX (814)926-4070 -Claims
FAX (814)926-3027 -Underwriting

National Coal Corporation
Page 2

EXHIBIT A

| PAYMENT # | DUE DATE | DEFICIT FUNDING |
|-----------|----------|-----------------|
| 1 | November 15, 2010 | 74,663 |
| 2 | December 15, 2010 | 74,663 |
| 3 | January 15, 2010 | 74,663 |
| 4 | February 15, 2011 | 74,663 |
| 5 | March 15, 2011 | 74,663 |
| 6 | April 15, 2011 | 74,663 |
| | | |
| TOTAL | | 447,978 |

 ROCKWOOD

*Member Argo Group*

P. O. Box 128
654 Main Street Rockwood, PA  15557

(800) 837-9062
(814) 926-4661

FAX (814)926-4070 -Claims
FAX (814)926-3027 -Underwriting

National Coal Corporation
Page three

EXHIBIT B

| PAYMENT # | DUE DATE | DEFICIT FUNDING |
|---|---|---|
| 1 | May 15, 2011 | 74,663 |
| 2 | June 15, 2011 | 74,663 |
| 3 | July 15, 2011 | 74,663 |
| 4 | August 15, 2011 | 74,663 |
| 5 | September 15, 2011 | 74,663 |
| 6 | October 15, 2011 | 74,663 |
| 7 | November 15, 2011 | 74,663 |
| 8 | December 15, 2011 | 74,663 |
| 9 | January 15, 2012 | 74,663 |
| 10 | February 15, 2012 | 74,663 |
| 11 | March 15, 2012 | 74,663 |
| 12 | April 15, 2012 | 74,663 |
| TOTAL | | 895,956 |